UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

DEBORAH RAMIREZ,

                                              **Case No.: 1:23-cv-**

                      **Plaintiff,**

          **-against-**

SMITH, CARROAD, LEVY, WAN & PARIKH, P.C.
and
PRAGNA PARIKH

                      **Defendants.**
---------------------------------------------------------------------X

<u>**ORIGINAL COMPLAINT AND JURY DEMAND**</u>

Plaintiff DEBORAH RAMIREZ brings suit against a debt collection law firm, SMITH, CARROAD, LEVY, WAN & PARIKH, P.C., as well as its partner, PRAGNA PARIKH (collectively "Defendants"), for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.,* for negligence, and for gross negligence for bringing a lawsuit against a New York City consumer over a New York City debt over 150 miles away in Albany, and then refusing to discontinue the lawsuit until a motion to dismiss was filed.

<u>**Summary of Claims**</u>[1]

The Fair Debt Collection Practices Act ("FDCPA") was created to prohibit abusive, deceptive, and unfair practices by debt collectors. Of all the practices by debt collectors, Congress created a whole section of the FDCPA, 1692i, to address a particularly egregious practice – suing a consumer in a distant venue unrelated to the contract at issue or where the consumer resided. The practice is *per se* abusive and unfair by requiring consumers to travel to a distant unrelated venue to exercise their due process rights to dispute the putative debt in court.

What happened to Deborah Ramirez is emblematic of why Congress prohibited this

---

[1] This summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid out in far greater detail in the statement of facts.

practice. When the Defendants – a debt collection law firm Smith, Carroad, Levy, Wan & Parikh, P.C. and its partner Pragna Parikh – sued Ms. Ramirez in Albany, New York, it was an implicit threat to pay a putative debt that she disputed or else incur childcare and travel costs just to appear in court. From the beginning, the Defendants knew that Ms. Ramirez lived in New York City and their client lived in New York City. And they either knew or should have known that the contract between their client and Ms. Ramirez was executed in New York City.

Defendants' willful disregard for Ms. Ramirez's consumer and due process rights was made all the more apparent by their continued litigation of the collection lawsuit in Albany even after Ms. Ramirez put them on notice, over and over again, that the lawsuit was in a distant improper venue. Ms. Ramirez begged them on the phone to do the right thing – they sent her discovery requests (signed by Mr. Parikh). Ms. Ramirez begged them in a letter to do the right thing – they filed a Motion for Summary Judgment (the Notice of which was signed by Mr. Parikh). It was only after the threat of Ms. Ramirez's Motion to Dismiss that Defendants finally relented.

But even here Defendants sought to insulate themselves from liability for their own misconduct by trying to get Ms. Ramirez to release any potential claims she had against them, even though Defendants were preserving their own claims by only dismissing the lawsuit without prejudice. However Ms. Ramirez would not give in to another attempt to deprive her of her rights, and finally Defendants entered into a stipulation discontinuing the lawsuit without releasing any of her potential claims.

Caring for four children and her mother, Ms. Ramirez's life requires juggling appointments for six people including herself. Three of her four children have autism, and Ms. Ramirez herself has heart problems. Traveling to Albany to fight against the lawsuit, over a

putative tuition debt that she feels was the product of misrepresentations made to her, felt impossible. The lawsuit hanging over her head consumed her life, making her cry, lose sleep, and lose weight from not eating. Even today just talking about the lawsuit causes her heart to race and make her feel short of breath.

## A.  JURISDICTION AND VENUE

1.    The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.    Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in New York County, New York.

## B.  PARTIES

3.    Plaintiff, Deborah Ramirez, is a mother of four children living in the Lower East Side neighborhood of Manhattan, New York with her husband.

4.    Defendant SMITH, CARROAD, LEVY, WAN & PARIKH, P.C. ("Smith Carroad") is a debt collection law firm organized under the laws of the State of New York. Smith engages in business in New York State and this suit arises out of Smith's business in New York State.

5.    Smith's principal purpose is the collection of consumer debts alleged to be due to another,

and it regularly does so. Specifically, Smith regularly collects or attempts to collect, directly or indirectly, rental arrear debts asserted to be due another by filing hundreds of collection lawsuits, collecting on putative judgments, and sending collection letters.

6.    Defendant Pragna Parikh is a managing partner of Smith and, on information and belief, organizes, manages, and controls the operation of Smith. Mr. Parikh, on information and belief, is a resident of the State of New York.

7.    Mr. Parikh, as a partner of Smith, regularly collects or attempts to collect, directly or indirectly, rental arrear debts asserted to be due another by filing hundreds of collection lawsuits, collecting on putative judgments, and sending collection letters.

## C.  STATEMENT OF FACTS

**Background: Mildred Elley misleads Ms. Ramirez into incurring the tuition debt**

8.    Ms. Ramirez sought out education to advance her career so she could provide a better life for her kids.

9.    She had already received a medical assistant degree from Sanford Brown Institute on September 29, 2006, and a pharmacy technician degree from Sanford Brown Institute on July 9, 2009.

10.    In 2015, Ms. Ramirez heard about a Licensed Practical Nurse (LPN) certification program provided by the school Mildred Elley, which is located at 25 Broadway, New York, NY 10004.

11.    When Ms. Ramirez contacted Mildred Elley to express interest in their LPN program, she was told that she would need to take course in their Associates Medical Assistant degree program first.

12.    Ms. Ramirez informed them that she already had a medical assistant degree from Sanford

4

Brown Institute, and Mildred Elley assured her that they would accept that.

13.    So on May 22, 2015, Ms. Ramirez signed an Enrollment Agreement with Mildred Elley. **Exhibit A** (Enrollment Agreement)

14.    In 2016, a hospital wanted to interview Ms. Ramriez for a position, so she had to miss a lot of class time to go to interviews and fill out paperwork and because of this, she decided to take a break from school.

15.    However, when the COVID-19 pandemic caused the school to switch to online instruction, Ms. Ramirez decided to try to complete it.

16.    Ms. Ramirez was blindsided by Mildred-Elley telling her that they wanted her to finish the Medical Assistant associates program in full first – a program for certification that she already had.

17.    Frustrated at having been misled by Mildred-Elley about how much she would have to do to get into the LPN program, she decided to stop attending.

18.    She believed they essentially were trying to get tuition for two certifications from her when she only needed one from them (as she had already received the other years ago).

19.    Ms. Ramirez thought that between grants and loans that any outstanding amounts had been covered.

20.    Notably, the estimate for financial aid that she received prior to re-entering the school showed that after the two semester she attended in 2020 before withdrawing her balance should have been -$781. **Exhibit B** (Tuition Estimate).

*Smith Carroad files a Collection Lawsuit in Albany, either to intentionally coerce or with reckless disregard for Ms. Ramirez's rights.*

5

21.   On November 30, 2022, Smith Carroad, by and through Defendant Pragna Parikh, filed the Collection Lawsuit against Deborah Ramirez in the Supreme Court of the State of New York, County of Albany. **Exhibit C** (Summons and Complaint).

22.   The venue for the Collection Lawsuit was improper on its face and misrepresented the basis for the venue.

23.   The creditor is clearly the "METRO NEW YORK CITY CAMPUS" of Mildred Elley, it's address is given as "25 Broadway, New York, NY 10004," and Ms. Ramirez's address is given as "410 Grand St. Apt. 26G New York NY 10002." *Id.,* p. 1.

24.   Despite this, Defendants claimed in ¶ 2 of the Complaint that "Upon information and belief, the Defendant(s) resides in the county in which this action is brought; or that the Defendant(s) transacted business within the county in which this action is brought in person or through his agent and that the instant cause of action arose out of said transaction." *Id.* p. 2.

25.   Defendants made this misrepresentation either (1) to intentionally obscure from the Albany Supreme Court and Ms. Ramirez that the basis of venue was actually a venue selection clause in the contract (and thus in violation of the Fair Debt Collection Practices Act), or (2) because they failed to perform a meaningful attorney review of the Collection Lawsuit and file that would have revealed that Ms. Ramirez resided in New York County and that the putative debt arose in New York County.

26.   Congress recognized that a debt collector filing suit in a distant venue is inherently an abusive debt collection practice and barred the practice. Specifically, a debt collector is barred from filing suit in a venue other than where the consumer resided at the time of suit or where the consumer signed to contract for the debt sought to be enforced. 15 U.S.C. 1692i.

27.     A distant venue is used by unscrupulous debt collectors to coerce consumers, especially those without the ability or financial means to travel, into settling the debt without the due process they are entitled to in court to dispute the putative debt and otherwise defend themselves.

28.     A distant venue makes the basic exercise of a consumer's rights into an ordeal requiring lengthy travel, accommodations in the distant venue, childcare, and other expenses.

29.     Defendants clearly knew that Ms. Ramirez resided in New York County, and knew or should have known that the contract from which the putative debt arose was signed in New York County.

30.     In filing, serving, and continuing to litigate the Collection Lawsuit in an improper distant venue, Defendants represented that Mr. Parikh had performed a meaningful attorney review of Ms. Ramirez's account and determined, based on professional attorney judgment, that the lawsuit was being filed in a proper venue.

31.     If Defendants had performed a meaningful attorney review, they would have, at a minimum, checked the Enrollment Agreement (**Exhibit A**) to see where the contract that the putative debt arose from was signed. Either Defendants failed to perform a meaningful attorney review – despite their implied representations to the contrary – or they had performed the meaningful attorney review, realized the debt arose in New York County, and then still filed, served, and continued to litigate the case in Albany County.

32.     Defendants knew they were required to perform a meaningful attorney review.

33.     These actions alone demonstrate a willful or wantonly negligent disregard for consumer's rights, but unfortunately for Ms. Ramirez, Defendants had only just begun to use a distant venue to attempt to coerce her into paying a putative debt that she would otherwise dispute.

**Defendants use the Albany Collection Lawsuit to attempt to coerce Ms. Ramirez into paying the putative debt rather than disputing it.**

34.  In December 2022, Ms. Ramirez received a copy of the Albany Lawsuit.

35.  The first time she read the Albany Lawsuit, she immediately noticed that it was in Albany, which confused and upset her.

36.  The Collection Lawsuit being venued in Albany made her scared and worried because she did not know how she could respond to or fight a lawsuit all the way up in Albany.

37.  She spoke with a collector at Smith Carroad named Tom.

38.  Tom was so rude and disrespectful to her that it made her shake – he was sarcastic because she did not have a good connection and was nervous and thus kept repeating herself.

39.  Tom told her that he could not help her and even disparagingly suggested that she could not read.

40.  When Ms. Ramirez told him that she could not go to Albany because she has four children, he responded simply by saying that he was not there to help her.

41.  Ms. Ramirez desperately called a number of different legal services providers, attempting to find help, but when she was unable to connect with any that day, she felt despondent.

42.  Unable to talk to Smith Carroad again after her treatment by Tom, Ms. Ramirez had her husband call instead.

43.  As Smith Carroad likely intended, the distant venue made Ms. Ramirez not want to dispute the putative debt despite believing the school had tricked her, so Mr. Ramirez suggested to Smith Carroad that they could pay $300 a month so that they would not have to travel to Albany.

44. Rather than settle on these ill-gotten gains, Smith Carroad decided to twist the knife, demanding $600 a month.

45. Because her husband had to work, on December 20, 2022, Ms. Ramirez next had her sister-in-law Cynthia Hernandez call, pretending to be Deborah Ramirez while Ms. Ramirez listened in.

46. To the shock of Ms. Ramirez and Cynthia Hernandez, Tom at Smith Carroad told Ms. Hernandez that he knew her name, her job, and other personal information.

47. Ms. Ramirez had no idea how Smith Carroad knew this about Ms. Hernandez, and the fact that they were able to find out that information about her seemingly just based on the phone that Ms. Hernandez used frightened her.

48. Ms. Ramirez told Tom at Smith Carroad that Ms. Hernandez had permission to talk to him on her behalf.

49. Ms. Hernandez explained that Ms. Ramirez lives in New York City and went to school in New York City, to which Tom simply replied that it was not his problem and he is not there to help.

50. Ms. Hernandez asked if the case could be transferred to New York City, to which he responded that was not his problem.

51. He also continued to insist on payments of $500 or more per month, even after Ms. Hernandez explained that Ms. Ramirez had four children.

52. Fortunately, Ms. Ramirez was able to connect with the legal services provider New York Legal Assistance Group.

53. However, NYLAG's assistance was limited – they could not represent her in Albany, and

could only help her draft *pro se* documents to file in her own defense.

54.  On January 18, 2023, Ms. Ramirez served a Verified Answer on Smith Carroad (c/o Defendant Pragna Parikh) via first class mail. **Exhibit D** (Answer).

55.  As the Second Affirmative Defense, Ms. Ramirez asserted "Improper Venue. This case relates to a putative consumer debt and was not filed where the contract was allegedly signed or where the defendant currently resides." *Id.,* p. 2.

56.  Ms. Ramirez also asserted as her Fourth Affirmative Defense that she disputed the amount owed, that the action was barred as unjust enrichment, and that Mildred Elley had violated the duty of good faith and fair dealing.

57.  Ms. Ramirez also sent a letter stating:

> "You filed this case in Albany. I live in NYC, I went to school at Mildred Elly's NYC campus, and the enrollment agreement you allege that I signed was signed in NYC. This case should not have been filed in Albany but in NYC where I reside or where this alleged contract was signed. Please dismiss this case against me." **Exhibit E** (First Venue Letter).

58.  Smith Carroad received the Answer by mail on January 23, 2023, and by fax on January 24, 2023.

59.  Rather than immediately discontinue the Collection Lawsuit based on its improper distant venue, Smith Carroad doubled down, serving Ms. Ramirez with discovery requests that she received on January 27, 2023. **Exhibit F** (Discovery Requests).

60.  The Discovery Requests were signed by Defendant Pragna Parikh.

61.  These Discovery Requests were not made to determine proper venue – Smith Carroad already had documents in its possession, custody, or control sufficient to determine that venue was improper.

62.  Instead, these discovery requests were an unfair abuse of process seeking documents almost entirely already in the possession of Mildred Elley and/or Smith Carroad, specifically:

    a.  "Any and all agreements, contracts, and/or supplementary agreements made between Plaintiff and Defendant."

    b.  "Any and all invoices, statements, or bills received by Defendant from Plaintiff."

    c.  "Any and all canceled checks, receipts, and/or bank statements reflecting payments made from Defendant to Plaintiff."

    d.  "Any and all correspondence, memorandum, and/or communications made between Plaintiff and Defendant, with regard to payments made or outstanding debt."

    e.  "Any documents, items, writings, and objects, indicating or evidencing any dispute of the amount alleged to be owed to Plaintiff."

**Exhibit F**.

63.  Worried that she may have to make her plea for discontinuing the Albany Collection Lawsuit for improper venue to the Albany Court itself, Ms. Ramirez obtained affidavits from Doctor Marion Billings explaining the diagnoses of autism for her sons.

64.  On February 17, 2023, Ms. Ramirez responded to the Discovery Requests, **Exhibit G** (Response to Discovery).

65.  Crucially, she also sent Smith Carroad (c/o Defendant Pragna Parikh) a letter on February 17, 2023, where she wrote "I live in New York City, I went to school as Mildred Elley's New York City campus, and the enrollment agreement you allege that I signed was signed in New York City." **Exhibit H** (Second Venue Letter).

66.  She asked that the case be dismissed against her because it "should not have been filed in Albany but in New York City where I reside or where this alleged contract was signed." *Id.*

67.  After receiving no response to her latest plea to discontinue the Collection Lawsuit based on its improper distant venue, Ms. Ramirez served Smith Carroad with a Motion to Dismiss.

**Exhibit I** (Motion to Dismiss).

68. In the Motion, Ms. Ramirez explained that she lived at the Grand Street address on the face of the Collection Lawsuit since 2016. *Id.,* ¶ 6.

69. Prior to that, she resided at 131 Broome Street, Apt. 12F, New York, NY 10002 from 2014-2016. *Id.* ¶ 7.

70. She never lived in Albany, never attended classes in Albany, and all her interactions with Mildred Elley occurred in New York County. *Id.* ¶¶ 8-11.

71. Ms. Ramirez also noted that "Plaintiff did not make any claims by its Complaint that venue was based on anything other than where I reside or where the cause of action arose. Even if there are other claims of forum selection, they were not pleaded by Plaintiff in its Complaint. *Id.* ¶ 23.

**Defendants make a last-ditched effort to secure a judgment in the Albany Collection Lawsuit, and then attempted to insulate themselves from liability for their illegal conduct.**

72. Unbeknownst to Ms. Ramirez, on the same day she sent the Motion to Dismiss to Defendants and the Albany Court, Defendants filed a Motion for Summary Judgment. **Exhibit J** (Motion for Summary Judgment).

73. Knowing venue was improper, rather than discontinuing the Collection Lawsuit Defendants attempted to secure a judgment with their MSJ, knowing that Ms. Ramirez would be unable to travel to Albany to defend herself from it.

74. Defendant Pragna Parikh signed the MSJ. *Id.*, p. 2.

75. In the MSJ, Defendants argued that venue was proper based on the venue selection clause in the Enrollment Agreement. *Id.,* p. 7, ¶ 13 *citing* **Exhibit A** (Enrollment Agreement).

76. Defendants were attempting to sandbag Ms. Ramirez and the Albany Court by misrepresenting proper venue in their Complaint (**Exhibit C**) but then in the MSJ switching to an entirely new, previously unasserted basis for venue that does not comply with both the FDCPA and local and state law.

77. Most damningly, Defendants attached the Enrollment Agreement to the MSJ (**Exhibit J**, p. 33), which clearly showed that the debt arose from "25 Broadway, New York, New York 10004."

78. The accompanying "Applicant Certification" (**Exhibit J**, p. 35) even provided in the bottom right hand corner that Mildred Elley was specifically on the 16th floor of 25 Broadway.

79. Seeing that no amount of notice from a consumer would deter the Defendants, NYLAG wrote their own letter, mailed and emailed to Defendants on April 6, 2023, telling Defendants that they were in violation of the FDCPA and demanding they send Ms. Ramirez a stipulation of discontinuance within 7 days. **Exhibit K** (NYLAG Letter).

80. Defendants sent Ms. Ramirez a Stipulation of Discontinuance which she received on April 17, 2023 – but they had ulterior motives. **Exhibit J** (Unfair Stipulation of Discontinuance).

81. The cover letter of the Stipulation was signed by Defendant Pragna Parikh.

82. Defendants hoped to protect themselves from any liability for their deceptive and unfair conduct using this Unfair Stipulation.

83. While the Defendants of course reserved their client's ability to re-file the Collection Lawsuit by discontinuing without prejudice, the Unfair Stipulation sought to have Ms. Ramirez "release the Plaintiff **and its counsel** [emphasis added] from any claims that have accrued or

may have accrued during the course of litigation relating to the above entitled proceeding." *Id.,* p. 2.

84.  But Ms. Ramirez would not forfeit her rights after Defendants had treated her and her rights so callously, and Defendants relented, entering into a Stipulation without a release which was filed on April 21, 2023. **Exhibit K** (Filed Stipulation of Discontinuance).

**Defendants' deceptive and unfair Albany Collection Lawsuit caused Ms. Ramirez so much distress that it exacerbated her heart condition**

85.  When Ms. Ramirez first received the Collection Lawsuit and read it, she started crying.

86.  Her heart was racing and she did not understand what was going on.

87.  She could not sleep that night, her nerves were making her shake everywhere.

88.  It felt impossible to go to Albany because she takes care of her four kids and her mother full time.

89.  Her kids were asking her if she was okay, and she told them "Mommy is strong," but she then had to go to the bathroom to cry more and try to calm down to put on a brave face for her children.

90.  When she spoke with the collector Tom at Smith Carroad, his rudeness towards her was so hurtful that it made her shake.

91.  Even after NYLAG started helping her, she was still worried.

92.  She was depressed and felt emotionally damaged and destroyed.

93.  All three of her boys are autistic and they require a lot of care, and one of her sons is 18 and preparing to go to college.

94.  Her youngest son especially requires a lot of care, even more than the average toddler. He

throws up a lot, does not verbally talk, and flaps his hands a lot.

95.   Her 8 year old son has a lot of emotional issues that also require a lot of care.

96.   During this time she ate very little and lost about 15 lbs.

97.   Her husband would try to take her out to nice restaurants to try to get her to eat and she would only be able to force herself to take a bite or two.

98.   She could not help but take about the lawsuit and the possibility of having to go to Albany all the time, to her husband, her brother, her mother, and her sister-in-law.

99.   She was crying every day.

100.  Her doctor saw her crying and asked if she wanted to see a therapist, which Ms. Ramirez declined because she does not feel comfortable talking to a therapist.

101.  When her dad told her that everything was going to be okay, it made her upset and lash out at him, saying "Everything is **not** going to be okay."

102.  When she was waiting to hear back from the many legal service providers she contacted, she felt despondent and told her husband "No one wants to help me."

103.  Ms. Ramirez would usually go to bed at 9 or 10 PM, but during this time she would stay up late worrying, her thoughts racing about how she can resolve this.

104.  She would sleep for an hour, wake up, go around the house and clean to try to distract herself, with her husband pleading for her to try to sleep.

105.  Every time she would wake up her youngest son would wake up, which added to her stress.

106.  She would be so tired that she would barely be able to do the basic things that she had to

do.

107.  When she first went to NYLAG's office, she was so stressed that she could barely speak, and even today her heart starting pounding when she talks about it.

108.  While she has always had problems with her heart, the stress exacerbated them, causing her to go see a doctor who diagnosed her with irregular sinus rhythm and tachycardia.

109.  She felt like she could not breathe.

110.  Her body's shaking got worse every time she looked at the Collection Lawsuit, every time she cried about it, every time she talked about it, and when she would be on the way to the NYLAG offices.

111.  She did not start feeling normal again until the lawsuit got dismissed.

### D.    COUNT 1: FAIR DEBT COLLECTION PRACTICES ACT (as to Attorney Defendants)

112. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

113. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

114. Congress designed the FDCPA to be enforced primarily through private parties – such as

plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance").

115. The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the tuition debt was allegedly incurred primarily for family, personal or household purposes.

116. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

117. For the reasons stated in the "Parties" section of this Complaint, each Attorney Defendant is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

118. Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e, 1692f, and 1692i. By way of example and not limitation Defendant materially violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law; and bringing a legal action against a consumer in a judicial district or similar legal entity other than in which the consumer signed the contract sued upon or in which such consumer resides at the commencement of the action.

119.    The injuries inflicted on Plaintiff by the Defendants are concrete and particular, and these injuries have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts.

120.    Ms. Ramirez suffered economic injuries that historically has provided a basis for lawsuits in American courts, including but not limited to economic damages for postage sending letters to Defendants regarding the improper venue and loss of time.

121.    Ms. Ramirez's injuries are analogous to the following common law claims: negligence and unjustifiable-litigation torts including abuse of process, wrongful use of civil proceedings, and malicious prosecution.

122.    The Attorney Defendants had a duty to exercise reasonable care in the collection of debts, including not filing and prosecuting lawsuits in distant venues as prohibited under the FDCPA.

## E.    COUNTS 2 AND 3: NEGLIGENCE AND GROSS NEGLIGENCE
### (As to All Defendants)

123.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

124.    Defendants owed Plaintiff a reasonable duty of care to not engage in deceptive acts and unlawful practices in the conduct of their business.

125.    Defendants also owed Plaintiff a reasonable duty of care to comply with the FDCPA and local laws and regulations.

126.    As a direct and proximate result of Defendant's breach of these duties, Plaintiff suffered compensable harm, including actual damages, economic damages, and emotional distress.

127.    Defendants owed Plaintiff a duty of reasonable care in their debt collection efforts.

128.    By way of example and not limitation, Defendants' negligence included filing a

18

Collection Lawsuit in a venue they knew or should have known was an improper distant venue and continuing to litigate the case after Plaintiff put them on notice of the improper distant venue.

129.    Defendants' failure to exercise even slight care or diligence amounts to, at minimum, negligence, and in the alternative, amounts to gross negligence.

130.    Moreover, had Defendants exercised even slight diligence they would have known their conduct was unlawful in that they were filing and prosecuting the Collection Lawsuit in an improper distant venue, even when placed on actual notice of the same.

131.    As to Plaintiff's claim of gross negligence, made in the alternative to Plaintiff's claims for negligence, Defendants' actions evince a reckless disregard for the rights of Plaintiff and others. The actions have the appearance of intentional wrongdoing. Defendants' conduct demonstrates a high degree of moral culpability and willful or wanton negligence or recklessness. As a result, Plaintiff is entitled to a punitive damage award.

## F.    JURY DEMAND.

132. Plaintiff demands a trial by jury.

## G.    PRAYER

WHEREFORE, Plaintiff requests the following relief:

a.    A declaration that all Defendants have committed the violations of law alleged in this action;

b.    Statutory damages;

c.    Reasonable attorney's fees and costs;

d.        Actual damages;

e.        Exemplary and punitive damages;

f.        Prejudgment and post judgment interest as allowed by law;

g.        All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.


Dated:  Brooklyn, New York
        May 24, 2023
                            Respectfully submitted,


                                */s/ Ahmad Keshavarz*

                            Ahmad Keshavarz
                            Emma Caterine
                            The Law Office of Ahmad Keshavarz
                            16 Court St., 26th Floor
                            Brooklyn, NY 11241-1026
                            Phone: (718) 522-7900
                            Fax:    (877) 496-7809
                            Email: ahmad@NewYorkConsumerAttorney.com